719 P.2d 295

**SQUAW PEAK COMMUNITY COVENANT CHURCH OF PHOENIX, Arizona, an Arizona corporation, Plaintiff-Appellant, Cross-Appellee,**

v.

**ANOZIRA DEVELOPMENT, INC. an Arizona corporation, Defendant-Appellee, Cross-Appellant.**

**No. 1 CA–CIV 8202.**

Court of Appeals of Arizona, Division 1, Department B.

April 8, 1986.

Robbins & Green, P.A. by Charlotte A. Ortlund, Phoenix, for plaintiff-appellant, cross-appellee.

Meyer, Hendricks, Victor, Osborn & Maledon, P.A. by Larry A. Hammond, Phoenix, for defendant-appellee, cross-appellant.

## OPINION

CONTRERAS, Judge.

This is an appeal from a judgment in favor of the defendant-appellee Anozira Development, Inc. (Anozira) denying plaintiff-appellant Squaw Peak Community Covenant Church of Phoenix (Church) injunctive relief to prevent the construction of curbs across a portion of the Church's easement. Because we determine that the trial judge abused his discretion in denying injunctive relief, we reverse and remand for entry of a permanent injunction in favor of the appellant Church.

Appellant brought this action to enjoin the appellee from obstructing the Church's easement for ingress and egress to certain property located just east of 32nd Street and Campbell Avenue in Phoenix, Arizona. A trial to the court was conducted on October 9, 1984, and formal judgment was entered in favor of Anozira on December 28, 1984. The Church has appealed from the judgment, and Anozira has filed a cross-ap-

peal from the trial court's denial of its request for attorney's fees.

Briefly stated, the facts giving rise to this litigation are as follows. In 1956, the Church acquired title to a parcel of property by warranty deed. In addition to granting fee simple title to the land, the deed granted the Church the following easement appurtenant upon the land of the grantor:

PARCEL NO. 2: An easement for ingress and egress 40 feet in width, lying 20 feet on either side of a line which extends from the North right-of-way line of East Campbell Avenue North to the South line of Parcel No. 1, and which line lies 170 feet East of and parallel to the West line of the East half of the Southwest quarter of the Northwest quarter of Section Twenty-four (24), Township Two (2) North, Range Three (3) East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona.

Shortly after receiving title to the property, the Church constructed a 28-foot wide paved roadway running north and south from the Church property to Campbell Avenue, through the approximate middle of the 40-foot easement. The remaining portions of the easement consisted of an unpaved 7-foot strip west of the paved roadway, and an unpaved 5-foot strip east of the roadway. The Church landscaped and maintained grass berms on the unpaved sides of the easement.

In 1984, Anozira purchased the servient estate. Anozira's property borders on Campbell Avenue, and is adjacent to the Church's southern property line. The Church also owns the parcel immediately east of Anozira's land, however, at the time of trial the Church had constructed buildings only upon the parcel north of Anozira's property. The Church's easement runs along the eastern side of Anozira's property from Campbell Avenue to the Church's property line to the north.

The record reflects that the parties negotiated over a period of several months concerning Anozira's desire that the Church relinquish part of its easement. Anozira's initial site plan called for moving and re-paving the 28-foot driveway five feet to the eastern side of the easement, and placing landscaping and a retaining wall on the resulting 12-foot wide strip on the west side of the easement. The Church, however, refused to relinquish any portion of the easement.

At the time of trial, it was stipulated that Anozira had withdrawn any intention to place walls and landscaping on the easement. Instead, Anozira sought to pave an area between the eastern entrance to the condominiums and the existing paved roadway, perpendicular to the easement. Additionally, it planned to install curbs, approximately six inches in height, curving outward and running for several feet along the edge of the proposed paved east-west entryway to the existing north-south roadway. Anozira contended that the curbs would improve traffic safety along the easement where vehicles entering and leaving the condominium area crossed into the existing paved roadway between the condominium entrance and Campbell Avenue. Anozira also contended that the 7-foot strip of the easement upon which the curbs would lie had not been paved by the Church, was not presently used for ingress and egress by the Church and that, therefore, the Church did not need the strip. Finally, Anozira argued that the proposed buffer curbs were reasonable and necessary to its development, were consistent with sound engineering principles, and would serve to direct cars safely into the Anozira development.

The Church sought to enjoin construction of the curbs as an encroachment inconsistent with its valuable right to use the entire 40-foot width for ingress and egress.

In entering judgment in favor of Anozira, the trial court made the following findings:

THE COURT FINDS that the proposed use by Anozira, to wit: the placement of permanent six-inch (6″) high buffer curbs, to extend no more than seven (7) feet into and on plaintiff's easement, will not unreasonably interfere with the plaintiff's right of ingress and egress.

The curbs will in no way interfere with the plaintiff's present or prospective use. Furthermore, the curbs are desirable from an engineering and safety point of view.

The Church argues that the trial court improperly considered the reasonableness and desirability of the buffer curbs to Anozira, as well as the Church's own "non-use" of the unpaved 7-foot strip in determining whether to enjoin installation of the curbs. It contends that the deed was unambiguous and gave the Church the right to use the entire 40-foot width for ingress and egress as a matter of law. Additionally, it argues that the width of its right-of-way could not be decreased irrespective of actual use or its need to use the entire width. It also asserts that as a matter of law the installation of the curbs obstructed the easement.

Anozira argues that the issue of whether the curbs are compatible with the easement was a factual determination such that our review is limited to determining whether the trial court's findings were clearly erroneous.

■ The Church's easement was created by an express grant in a warranty deed. Thus, the extent of the Church's right must be determined by construction of the language of the deed. *See* 3 Tiffany, *Real Property* § 802 (3d Ed.1939); 3 Powell, *Real Property* § 415 at 34–183 (Rev.1985). The interpretation of an instrument is a question of law to be determined by this court independent of the findings of the trial court. *See Cecil Lawter Real Estate School, Inc. v. Town & Country Shopping Center Co., Ltd.,* 143 Ariz. 527, 533, 694 P.2d 815, 821 (App.1984).

We have found no Arizona decisions addressing the scope of the use of a right-of-way easement under circumstances similar to the instant case. The general rule accepted in other jurisdictions has been stated in *Aladdin Petroleum Corp. v. Gold Crown Properties,* 221 Kan. 579, 584, 561 P.2d 818, 822 (1977), as follows:

The law appears to be settled that where the width, length and location of an easement for ingress and egress have

been expressly set forth in the instrument the easement is specific and definite. The expressed terms of the grant or reservation are controlling in such case and consideration of what may be necessary or reasonable to a present use of the dominant estate are not controlling. If, however, the width, length and location of an easement for ingress and egress are not fixed by the terms of the grant or reservation the dominant estate is ordinarily entitled to a way of such width, length and location as is sufficient to afford necessary or reasonable ingress and egress.

*See also Andersen v. Edwards,* 625 P.2d 282 (Alaska 1981); *Flower v. Valentine,* 135 Ill.App.3d 1034, 90 Ill.Dec. 703, 482 N.E.2d 682 (1985); *Lindhorst v. Wright,* 616 P.2d 450 (Okla.App.1980). *See generally Restatement of Property* § 486 (1939); 3 Tiffany, *Real Property* § 805 (3d Ed. 1939); 28 C.J.S. Easements § 75, p. 753 (1941).

■ Our first inquiry, therefore, is whether the language creating the easement is ambiguous. If, as the Church claims, the deed is unambiguous and grants the Church the right of ingress and egress over the entire 40-foot width of the easement, the deed governs and considerations of what is reasonable and necessary for ingress and egress are not controlling. *See* 3 Tiffany, *Real Property* § 805 (3d Ed.1939). If the language is ambiguous, a reasonably convenient and suitable way across the servient land is presumed to be intended. *See* 3 Tiffany, *Real Property* § 805 (3d Ed.1939). What is reasonable becomes a question of fact to be determined by the trial court considering all the surrounding circumstances. *See, e.g., Andersen v. Edwards,* 625 P.2d at 286–87; *Barton's Motel, Inc. v. Saymore Trophy Co., Inc.,* 113 N.H. 333, 335, 306 A.2d 774, 776 (1973); *Boss v. Rockland Electric Co.,* 95 N.J. 33, 39–40, 468 A.2d 1055, 1058–59 (1983).

■ In the case before us, the deed provides that the Church is granted "[a]n ease-

ment for ingress and egress 40 feet in width" and then sets forth the legal description of the location of that easement. There is authority that the width of an easement for ingress and egress is not necessarily coextensive with the parcel or area over which the easement is granted. Some cases hold that a grant or reservation of a right-of-way "over" a particular area, strip or parcel is not ordinarily to be construed as providing for a way as broad as the ground referred to. *See generally* Annot., 28 A.L.R.2d 253 § 7 (1953). Without deciding whether Arizona would follow this line of authority, we conclude that the language at issue here unambiguously creates an easement that is 40 feet in width. *Compare Schaefer v. Burnstine*, 13 Ill.2d 464, 150 N.E.2d 113 (1958) ["right-of-way for ingress and egress over a strip of land 40 feet in width" held to be unambiguous]; *Hester v. Johnson*, 335 S.W.2d 574 (Ky. 1960) ["said right-of-way to be at least 30 feet in width" held to be unambiguous]; *Lindhorst v. Wright*, 616 P.2d 450 (Okla. App.1980) ["a perpetual right of ingress and egress on and across 40 feet of the SW/4 of the SW/4" held to be unambiguous]. *But see Andersen v. Edwards, id.; Barton's Motel, Inc. v. Saymore Trophy Co., id.; Hyland v. Fonda*, 44 N.J.Super. 180, 129 A.2d 899 (N.J.App.Div.1957).

■ Apparently, Anozira does not assert that the deed is ambiguous. Nevertheless, it contends that whether the installation of curbs across a 7-foot strip of the easement obstructs the existing right-of-way is an issue of fact. From this premise, it argues that the court could decide whether the curbs obstructed reasonable ingress and egress to the Church property. We disagree. Given an unambiguous 40-foot wide right-of-way, the court could only determine whether the curbs would obstruct the right to ingress and egress over the *entire* 40-foot wide strip. *See generally* 28 C.J.S. Easements § 96 at 779 (1941).

It is well established that the owner of a right-of-way for ingress and egress has a right to use the full width of the area unhampered by obstructions placed there-

on. *Flower v. Valentine*, 135 Ill.App.3d at 1040, 90 Ill.Dec. at 708, 482 N.E.2d at 687; *Hoff v. Scott*, 453 So.2d 224 (Fla.App.1984); *Monell v. Golfview Road Assoc.*, 359 So.2d 2 (Fla.App.1978).

In *Hoff v. Scott*, the Florida Court of Appeals reversed the trial court's refusal to require owners of a servient estate to remove certain mobile homes and concrete pads which encroached upon a portion of a 20-foot wide easement for ingress and egress. The court stated:

The language of the deed is not ambiguous, and we are unable to read it as merely giving a right to travel somewhere over the twenty foot area. It is clear from the wording of the deed that the whole strip was set aside for ingress and egress....

The servient owner has no right to place permanent obstructions in the described easement area that would prevent the dominant tenement owner from free passing over *any part* of the easement.... Considerations about what may be reasonably necessary for the dominant tenement owner's use or needs is not appropriate or relevant in this case. (Emphasis in original.)

453 So.2d at 225–226.

It is clear from the findings of fact that the trial court considered the Church's right to ingress and egress in terms of its actual use or future needs. There is also some indication in the last sentence of those findings that the court considered Anozira's needs.

■ The facts were undisputed that the two curbs would be six inches in height, and were to be permanently located in an east-west direction across seven feet of the 40-foot wide north-south easement. No reasonable inference can be drawn from these facts that north-south traffic across these curbs would be unobstructed. Should the Church decide at some later time to pave the entire 40-foot strip or otherwise utilize the entire width for ingress and egress, these permanent curbs would prevent north-south traffic over the west seven feet of easement.

Anozira's reliance upon Annot., 52 A.L. R.3d 9, 15–167 (1973), and *Gamburg v. Cooper*, 131 Ariz. 545, 642 P.2d 890, 891 (App.1982), is misplaced. These authorities deal with the placement of gates upon easements. They involve swinging, unlocked gates, rather than immovable curbs. Additionally, the annotation refers to the general rule that an unlocked gate across a right-of-way is reasonable only "if necessary for the use of the servient estate." *Gamburg* applies the same principle finding that two elements are necessary to permit a gate upon an easement: (1) it must be necessary to the use of the servient estate, and (2) it must not constitute an unreasonable interference with the right of passage. 131 Ariz. at 546, 642 P.2d at 891. There was evidence that Anozira would prefer to have barrier curbs but no evidence that they were essential to the use of its property. Additionally, the second element of the *Gamburg* test is inapposite to the instant case. A gate does not usually restrict or prevent passage in the manner of a permanent structure. It may be opened or closed. The proposed curbs were to be permanent traffic barriers. While the curbs would not directly interfere with general access to the Church property over the paved roadway as it currently exists, they would unquestionably interfere with access across the entire 40-foot width.

The Church has also argued that the trial court improperly considered its non-use of the entire 40-foot easement as a factor in reaching its decision. The law is well-settled that the owner of an easement created by express grant is under no duty to make use of the easement in order to retain his entitlement. *See generally* 25 Am.Jur.2d Easements and Licenses § 105 at 109 (1966); Annot., 25 A.L.R.2d 1265 (1952); 3 Powell *Real Property*, § 423 at 34–248 (1975). While the Church was not currently using the entire 40-foot easement, installation of the curbs would effectively interfere with its *right* to such use. It is not clear from the judgment, however, whether non-use was a factor in denying injunctive relief. We will not presume that error occurred.

We recognize that in reviewing the trial court's denial of injunctive relief, we are limited to considering whether the trial court abused its discretion. *Financial Associates Inc. v. Hub Properties, Inc.*, 143 Ariz. 543, 545, 694 P.2d 831, 833 (App. 1984). However, the trial court's findings of fact clearly indicate that it improperly considered the reasonableness of general access by the Church to its property rather than whether the curbs were an encroachment upon the right to use the entire 40-foot width as a right-of-way. We also find as a matter of law that permanent curbing running perpendicular across an easement is an obstruction of that easement. We therefore conclude that the judgment of the trial court must be reversed.

### ATTORNEY'S FEES

Since we have reversed the judgment of the trial court, it is unnecessary for us to consider Anozira's contention that it should have been awarded attorney's fees below. We note that both parties have attempted to raise factual arguments with respect to responsibility for this matter proceeding to trial. These issues are not relevant to our decision on the merits of the Church's rights in the easement. They may be relevant on remand to the trial court's exercise of discretion with respect to awarding attorneys fees.

■ As we reverse on the merits we must remand the issue of the Church's request for attorney's fees for services rendered prior to appeal to the trial court to determine in its sole discretion. The Church has also requested attorney's fees for this appeal pursuant to A.R.S. § 12–341.01 and Rule 21(c), Arizona Rules of Civil Appellate Procedure. In the exercise of our discretion, and based upon our determinations above, having successfully prosecuted their claim, the appellant Church may recover its attorney's fees on appeal by complying with Rule 21, Arizona Rules of Civil Appellate Procedure, and our decision in *Schweiger v. China Doll Restaurant*,

*Inc.,* 138 Ariz. 183, 673 P.2d 927 (App. 1983).

The judgment is reversed. This matter is remanded for entry of a permanent injunction in favor of the Church, and for proceedings in accordance with this opinion.

JACOBSON, P.J., and CORCORAN, J., concur.